IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHAEL W. OWENS, SR.,** | : | Bankruptcy No. 04-22875 BM |
| | : | |
| | : | **Trustee's Final Report And Account,** |
| | : | **Proposed Order Of Distribution and** |
| | : | **Fee Applications** |
| | : | |
| **Debtor** | : | **Chapter 7** |

## MEMORANDUM OPINION

Debtor Michael W. Owens, Sr. and Linda A. Owens, his wife, have objected to the chapter 7 trustee's proposed final distribution of proceeds realized from the sale of their residence which they owned as tenants by the entirety when debtor commenced his bankruptcy case. They maintain that according to the law of Pennsylvania pertaining to tenancies by the entirety, the chapter 7 trustee is required to distribute the proceeds to creditors to which they are jointly liable instead of to creditors to which debtor alone is liable. The chapter 7 trustee maintains that the distribution scheme she proposes is mandated by § 726 of the Bankruptcy Code.

In addition, the chapter 7 trustee and counsel to the chapter 7 trustee have submitted applications requesting compensation for services rendered and for reimbursement of expenses incurred. No objections were raised to the fee applications.

For reasons set forth herein, the objection of debtor and Linda Owens to the proposed final distribution scheme will be overruled and the trustee's proposed final

distribution will be approved. The fee applications of the chapter 7 trustee and counsel to the chapter 7 trustee will be approved in the amounts requested.

## FACTS

The material facts concerning the present controversy are straightforward.

Debtor Michael W. Owens, Sr. filed a voluntary chapter 13 petition on March 4, 2004. His wife did not join in the petition and is not a debtor in bankruptcy.

The schedules accompanying debtor's petition listed assets with a total declared value of $431,618.00 and liabilities totaling $375,993.12.

Included among the assets listed on the schedules was debtor's interest in the marital residence which he and his wife owned as tenants by the entirety.[1] The property had a declared value of $175,000.00.

Debtor claimed an exemption in the residence in the amount of $87,000.00, approximately one-half of its declared value. The exemption was based on § 522(b)(2)(B) of the Bankruptcy Code.[2]

---

[1] Debtor and his wife also owned as tenants by the entirety a 27-acre tract of real property. The proceeds realized from the sale of this property by the chapter 7 trustee were sufficient to pay only the mortgage on the property and the costs of the sale. No proceeds remained from the sale of this property for distribution to creditors.

[2] This provision is now found at § 522(b)(3)(B) of the Bankruptcy Code. Except for this change, the provisions are identical. We will refer to § 522(b)(2)(B) when discussing the provision in this memorandum opinion. Subsection 522(b)(2)(B) provides as follows:
> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this section....
> > (2)(B) any interest in property in which they debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law.

Four creditors were identified on the bankruptcy schedules as having claims for which debtor and his wife were jointly liable. The holder of the mortgage lien on the family residence was identified as a having an undisputed secured claim against both debtor and his wife. The other three were identified as having undisputed general unsecured claims for "credit card purchases": MBNA had a claim in the amount of $8,346.88; Sears Gold had a claim in the amount of $1,749.00; and US Bank had a claim in the amount of $7,768.00. All other creditors identified on the schedules were creditors of debtor alone.

The present controversy involves two creditors of debtor alone, both of which were listed as having undisputed general unsecured claims for unpaid "employee income tax". United States Internal Service (IRS) was identified as having a claim in the amount of $55,311.37; Pennsylvania Department of Revenue (PDR) was identified as having a claim in the amount of $6,016.64.

IRS eventually filed a timely amended proof of claim in which it asserted, among other things, that it had an unsecured *priority* claim in the amount of $70,539.15. PDR also filed a timely amended proof of claim in which it asserted that it had an unsecured *priority* claim in the amount of $340.64. There were no objections to PDR's amended proof of claim.

Debtor's chapter 13 proceeding was converted to a chapter 7 proceeding and a chapter 7 trustee was appointed on November 23, 2004. The individual serving as chapter 7 trustee subsequently was approved to serve as counsel to the chapter 7 trustee

Debtor was granted a discharge of all his debts, including those for which he was liable along with his wife, on April 19, 2005.

On October 1, 2007, the chapter 7 trustee sought authorization to sell the residence of debtor and his wife to the wife for $175,000.00. After appropriate notice and hearing, an order confirming the sale of the residence to debtor's wife issued on December 16, 2007. The closing occurred on December 28, 2007.

Debtor's wife did not pay the full purchase price at the closing. She was given a "credit" in the amount of $87,500.00 – one-half of the purchase price – because of her interest in the property. She ultimately paid $87,500.00 to the chapter 7 trustee at the closing.

The amount remaining from these sale proceeds after the mortgage lien and the costs of the sale were paid amounted to $59,937.45.

On August 25, 2008, counsel to the chapter 7 trustee submitted an application in accordance with § 330 of the Bankruptcy Code requesting payment of $13,026.86 as compensation for her services and reimbursement of expenses.

On September 4, 2008, the chapter 7 trustee submitted an application pursuant to § 326 of the Bankruptcy Code requesting payment of $9,155.46 as compensation for her services and reimbursement of expenses incurred.

That same day, the chapter 7 trustee also submitted a final report and account and a proposed final order of distribution to creditors. According to the chapter 7 trustee, a total of $60,536.90 was available at that time for distribution to creditors.

The chapter 7 trustee proposed paying $13,026.90 to herself as counsel to the chapter 7 trustee; $9,155.45 to herself as trustee; and $250.00 to the clerk of this court. The proposed distribution to these administrative creditors totals $24,431.31 ($13,026.86 + $9,155.45 + $250.00 = $24,431.31).

Assuming these proposed payments are made, a total of $38,104.59 remains for distribution to pre-petition creditors of the bankruptcy estate ($60,536.90 - $22,431.31 = $38,104.59).

The chapter 7 trustee proposed distributing this remainder on a *pro rata* basis to IRS and PDR, both of which are creditors of debtor alone. Specifically, she proposed distributing $37,921.46 to IRS and $133.13 to PDR. Under the proposed distribution, nothing would remain for distribution to MBNA, Sears Gold and US Bank. These creditors, it has been noted, are creditors of both debtor and his wife.

Debtor and his wife objected to the proposed final distribution to creditors. They assert that the chapter 7 trustee is *required* by Pennsylvania law pertaining to tenancies by the entirety to make distribution to MBNA, Sears Gold and US Bank *before* making any distribution to IRS and PDR.

It should be noted parenthetically that MBNA, Sears Gold and US Bank, creditors with "money on the table" which they will not receive if the proposed final distribution is

approved, have not objected. Their silence suggests they do not believe that the distribution the chapter 7 trustee proposes is contrary to law. Evidently only debtor and his wife believe that it is.

The reason why debtor and his wife have objected is obvious. Debtor's obligations to MBNA, Sears Gold and US Bank have already been discharged. Because debtor's wife is not a debtor in bankruptcy and therefore has not received a discharge, her obligation to these creditors will remain if the IRS and PDR are paid all of the proceeds remaining for distribution to debtor's creditors. The objection to the chapter 7 trustee's proposed final distribution has been heard and the parties have submitted post-hearing briefs on the issues raised. The matter is now ready for decision.

### THE ISSUE PRESENTED HERE

It is essential to clarify what debtor and his wife are (and are not) maintaining here before addressing the merits of their objection.

Debtor and his wife have taken exception to the chapter 7 trustee's proposal to pay IRS and PDR, which are creditors of debtor alone, instead of paying MBNA, US Gold and US Bank, which are creditors of both debtor and his wife. We understand them to mean by this that the chapter 7 trustee should make distribution to the latter *before* making distribution to the former.

Debtor and his wife have *not* asserted in their objection or post-hearing brief that any funds remaining after MBNA, Sears Gold and US Bank have been paid should be remitted to debtor in light of his claimed exemption instead of to IRS and PDR. We have

pored over their objection and brief at length and can find nothing indicating that they take this latter position.

As we understand it, the issue raised here is whether the distribution scheme in a chapter 7 case, which is set forth at § 726 of the Bankruptcy Code, is "trumped" by state law concerning the payment of debts owed by both spouses when property which they own as tenants by the entirety is liquidated in a bankruptcy proceeding. Debtor and his wife maintain that state law takes precedence and that the liquidation proceeds must be paid first to creditors of both spouses and then to creditors of debtor alone. We will limit our analysis to this issue.

### TENANCY BY THE ENTIRETY

The law concerning tenancies by the entirety is not a creation of federal law, but of the common law of Pennsylvania. We will briefly summarize this law before proceeding with our analysis of the issue presented here.

For most purposes, spouses are treated under the law as separate individuals. Each is *sui generis* and may own property apart from the other. When they own property jointly, however, a rebuttable presumption arises that they own the property as tenants by the entirety. Despite being separate individuals, their interests in the property are indivisible. *Sterrett v. Sterrett*, 401 Pa. 583, 585, 166 A.2d 1, 2 (1960).

A tenancy by the entirety is a type of joint tenancy which is modified by the common-law fiction that husband and wife are but a single person. *Frederick v. Southwick*, 165 Pa. Super 78, 85, 67 A.2d 802, 805 (1949). Husband and wife are treated as though

they were a corporate entity. *C.I.T. Corp. v. Flint*, 333 Pa. 350, 354, 5 A.2d 126, 129 (1939). Each is seized *per tout et non my* – of the whole as opposed to a share. *Estate of Barlotta*, 798 A.2d 771, 774 (Pa. Super. (2002), *aff'd*, 575 Pa. 587, 838 A.2d 594 (2003). This type of ownership is reserved exclusively for married couples. *First Federal Savings & Loan Association of Greene County v. Porter*, 408 Pa. 236, 242, 183 A.2d 318, 322 (1962).

Creditors of only one spouse cannot acquire by judgment an enforceable lien on entireties property, or title therein by sale or execution. *Napotnik v. Equibank, et al.*, 679 F.2d 316 (3d Cir 1984) (citing *Amadon v. Amadon*, 359 Pa 434, 59 A.2d 135 (1948)). At most, such a creditor may obtain a presently *un*enforceable lien upon that spouse's expectancy of survivorship. This proposition has been characterized as the "chief distinguishing characteristic" of tenancies by the entirety. *Napotnik*, 729 F.2d at 319.

A judgment creditor may execute on entireties property to satisfy its judgment *only if both spouses are judgment debtors* of that creditor. *Klebach v. Mellon Bank*, 388 Pa. Super. 203, 208, 565 A.2d 448, 450 (1989). Entireties property is immune from process, execution or forced sale when only one of the spouses is a judgment debtor. *Klebach*, 236 Pa. at 523, 84 A. at 954. Enforcement of process in such an instance would impermissibly allow the taking of the interest one spouse in the property to satisfy a liability of only the other spouse. *Biehl v. Martin*, 236 Pa. 519, 523, 84 A. 953, 954 (1986).

Other than by the death of a spouse, the only ways in which entireties property may be severed are by joint conveyance of the property, divorce, or express or implied

mutual agreement. *Clingerman v. Sadowski*, 513 Pa. 179, 183-84, 519 A.2d 378, 381 (1986).

Applying these principles to the present case, MBNA, Sears Gold and US Bank in principle could have become judgment creditors of debtor and his wife and thus could have executed on their residence to satisfy their judgments. Because IRS and PDR are creditors of debtor alone, they could have obtained a judgment against him but could not have executed on the residence to satisfy their judgments.

What remains to be determined here is whether things are different in some important way in a chapter 7 bankruptcy case. Must proceeds derived from the sale of entireties property be distributed in bankruptcy to creditors of both spouses before distribution can be made to creditors of the debtor alone?

## IS *NAPOTNIK* DISPOSITIVE?

Debtor and his wife maintain in their post-hearing brief that the distribution scheme proposed by the chapter 7 trustee is "inconsistent" with the holding in *Napotnik*. It is inconsistent, they maintain, because the chapter 7 trustee proposes paying creditors of debtor alone before paying creditors of both debtor and his wife.

Their assertion lacks merit. The primary issue resolved in *Napotnik* was different from and has no application to the issue presented here. While there are some similarities between the facts in *Napotnik* and the facts presented in this matter, the dissimilarities are more significant than the similarities.

As in the present case, the debtor in *Napotnik* filed a voluntary bankruptcy petition. His wife did not join in the petition and was not a debtor in bankruptcy. On his bankruptcy schedules, the debtor in *Napotnik* listed as an asset the residence which he and his owned as tenants by the entirety. Debtor and his non-debtor wife were jointly liable to Equibank on a debt they jointly owed to Equibank. In addition, the debtor claimed an exemption in the real property pursuant to § 522(b)(2)(B) of the Bankruptcy Code.

*Napotnik* and the present matter, however, differ in certain critical respects.

For instance, Equibank had confessed judgment against the debtor and his wife on a note they had executed in favor of Equibank. As a result, Equibank had a judicial lien against their residence. *Napotnik*, 679 F.2d at 317-18. No such judgment lien exists in the present case.

The exemption claimed by the debtor in *Napotnik* was in the amount of $180,000.00, the *entire* value of the declared value of the real property. *Napotnik*, 679 2d at 318. Debtor in this case claimed an exemption in the amount of $87,000.00, approximately *one-half* of the declared value of the above residence.

Finally, the debtor in *Napotnik* brought a motion under § 522(b)(f)(1)[3] of the Bankruptcy Code to avoid Equibank's judicial lien based on the theory that the lien

---

[3.] Subsection 522(f)(1) provides in pertinent part as follows:

> ...[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is –
> (A) a judicial lien....

11 U.S.C. § 522(f)(1)(A).

impaired his claimed exemption in the residence. *Napotnik*, 679 F.2d at 318. Because no such judicial lien exists in the present case, debtor obviously did not bring a motion to avoid it. Equibank objected to the debtor's claimed exemption and to his motion to avoid its judicial lien. *Napotnik*, 679 F.2d at 318.

Because of these differences in the facts, the issues presented on appeal in *Napotnik* differ significantly from the issues presented in this case.

The bankruptcy court determined in *Napotnik* that Equibank's judicial lien was not avoidable under § 522(f)(1) because the debtor therein could exempt "only his ownership equity in the property above the liens of creditors of both debtor and his wife". *Napotnik*, 679 F.2d at 318. By consent of the parties, debtor by-passed the District Court and appealed directly to the United States Court of Appeals for the Third Circuit.

At the outset of its opinion, the Third Circuit described the issue presented in *Napotnik* as follows:

> In this case we must determine the application of a Code exemption provision to property held in tenancy by the entirety in light of the common law of Pennsylvania.

*Napotnik*, 679 F.2d at 317.

Later on, the Third Circuit stated that the outcome of debtor's appeal depended on the interpretation to be given to the final phrase of § 522(b)(2)(B):

> "to the extent that such interest as a tenant by the entirety ... is exempt from process under applicable nonbankruptcy law".

*Napotnik*, 679 F.2d at 318.

- 11 -

According to the Third Circuit, a creditor "with a joint judgment on a joint debt" could levy upon the property and upon the interests therein of both spouses. Because the interests of both spouses was available to their joint creditors, it followed that the debtor's interest in the property was "not unavailable" to such creditors and thus *not* "exempt from process" under the law of Pennsylvania. *Napotnik*, 679 F.2d at 321.

Resolution of the appeal in *Napotnik* was summarized as follows:

> Since this debtor's interest in the real property owned with his wife as tenants by the entirety is not exempt from process in Pennsylvania because they are joint obligors, he is not entitled to exempt that portion of his equity subject to Equibank's judicial lien, and cannot avoid that lien under Section 522(f). The order appealed from will be affirmed.

*Napotnik*, 679 F.2d at 321-22.

This issue is not present here; no objection was made to the exemption debtor claimed in the above real property which he owned with his wife as tenants by the entirety. How to interpret (and apply) the final phrase of § 522(b)(2)(B) is not an issue in this matter.

The issue raised in the present matter instead is whether a proposed distribution scheme, which is based on § 726 of the Bankruptcy Code, is "trumped" by applicable state law concerning payment of debts owned when property spouses own as tenants by the entirety has been liquidated. Debtor and his wife assert here that state law takes precedence over § 726 and that the proceeds derived from liquidating such property must be paid to creditors of both spouses instead of creditors to which debtor alone is liable. This issue was not raised (and decided) in *Napotnik*.

We conclude in light of the foregoing considerations that the objection to the final distribution scheme proposed by the trustee is not "inconsistent" with *Napotnik*.

### DOES § 726 OF THE BANKRUPTCY CODE PREEMPT THE LAW OF PENNSYLVANIA CONCERNING TENANCIES BY THE ENTIRETY?

Having concluded that the chapter 7 trustee's proposed final distribution is not "inconsistent" with *Napotnik*, we next must determine whether § 726 takes precedence over the law of Pennsylvania concerning tenancies by the entirety. More precisely, may the chapter 7 trustee in this case distribute proceeds from the sale of the above entireties property to creditors to which *only* debtor was liable before making distribution to creditors to which debtor was *jointly* liable along with his wife?[4]

Perhaps because debtor and his wife assumed that the proposed distribution was "inconsistent" with *Napotnik* and that *Napotnik* therefore was dispositive, they have not addressed this issue. They have left this court to fend for itself in resolving this issue. We fortunately need not consider this issue at length, as the Third Circuit has already spoken about whether the Bankruptcy Code takes precedence over state law concerning the distribution of assets to creditors of a debtor in bankruptcy.

State law regulating the distribution among creditors of assets in bankruptcy "must give way" to the all-encompassing federal law of creditors' rights. *City of New York v. Quanta Resources Corp. (Matter of Quanta Resources Corp.)*, 739 F.2d 912, 920 (3d Cir 1984), *aff'd,*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (citing *American Surety*

---

[4] If the answer to this question is affirmative, it would not matter if the trustee's proposed distribution was in fact "inconsistent" with *Napotnik*. Section 726 would take precedence even if it were "inconsistent". We have addressed the inconsistency question for the sake of thoroughness.

*Co. v. Sampsell*, 327 U.S. 269, 272, 66 S.Ct. 571, 573, 90 L.Ed. 663 (1946)). That is to say, the Bankruptcy Code "precludes" the distribution of assets, except as provided for in the Code. *Calpine Corp. v. O'Brien Energy, Inc. (In re Environmental Energy, Inc.)*, 181 F.3d 527, 532 (3d Cir 1999). Section 726 of the Bankruptcy qualifies as such a provision.

It is doubtful that the common law of Pennsylvania concerning tenancies by the entirety has any bearing on the distribution of funds realized from the liquidation *in bankruptcy* of entireties property. To the extent that the law of Pennsylvania concerning tenancies by the entirety does apply, however, it is *preempted* by the distribution scheme set forth in the Bankruptcy Code.

The discussion of tenancies by the entirety found in *Napotnik* in our estimation should be limited to situations in which a debtor in bankruptcy claims an *exemption* in entireties property in accordance with § 522(b)(2)(B) of the Bankruptcy Code. We so conclude because the Third Circuit limited its analysis to construing and applying the final phrase of § 522(b)(2)(B).

There is another reason why we will not sustain the objection to the chapter 7 trustee's opposed final distribution: sustaining the objection would produce results which we consider to be grossly inequitable.

Debtor has already been discharged from his obligation to MBNA, Sears Gold and US Bank. As a consequence, it should not matter to him *for bankruptcy purposes* whether MBNA, Sears Gold and US Bank are paid ahead of IRS and PDR. Debtor will not be prejudiced from an economic perspective if the proposed final distribution is approved.

The reason why debtor and his wife have objected, we indicated previously, is that if BNA, Sears Gold and US Bank are not paid ahead of IRS and PDR, her liability to MBNA, Sears Gold and US Bank will remain in place. It is to *her* economic advantage that MBNA, Sears Gold and US Bank be paid before IRS and PDR are paid. MBNA, Sears Gold and US Bank, it was pointed out, have not bothered to object to the trustee's proposed final distribution. We can think of no compelling reason for sustaining the objection when its sole purpose to benefit debtor's wife pecuniarily.

Debtor's wife was given "credit" for her interest in the entireties property and paid only $87,500.00. Not only did debtor's wife purchase the property for one-half of its value, the proceeds derived from the sale would be used to pay creditors to which she alone remains liable now that debtor has received a discharge of his debts. This would constitute an unacceptable windfall for her. Moreover, nothing would prevent debtor's wife from conveying the property to herself and debtor as tenants by the entirety. In addition to receiving a general discharge, debtor once again would have an ownership interest in the property. Such an outcome is not easily (if at all) reconciled with the principles underlying bankruptcy. We conclude in light of the foregoing that the objection of debtor and his wife to the final distribution scheme proposed in this case by the chapter 7 trustee must be overruled. The trustee's proposed final distribution will be approved.

## FEE APPLICATIONS OF THE CHAPTER 7 TRUSTEE AND
## COUNSEL TO THE CHAPTER 7 TRUSTEE

The chapter 7 trustee and counsel to the chapter 7 trustee, who are the same individual, have submitted fee applications.

The chapter 7 trustee requests compensation in the amount of $8,713.14 in accordance with the schedule found at § 326(a) of the Bankruptcy Code and reimbursement of expenses in the amount of $442.31. The amount requested totals $9,155.45.

Pursuant to § 326 of the Bankruptcy Code, counsel to the chapter 7 trustee requests compensation in the amount $12,620.00 for services rendered and for reimbursement of expenses in the amount of $406.08. The amount requested totals $13,026.66.

No objections to the applications of the chapter 7 trustee or of counsel to the chapter 7 trustee have been raised. We have reviewed the applications and the supporting documents on our own and find nothing objectionable about them. We are satisfied that the amounts requested are reasonable and appropriate. The applications consequently will be approved.

An appropriate order will issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Date: 1-26-09

FILED

JAN 26 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **MICHAEL W. OWENS, SR.,** | : | Bankruptcy No. 04-22875 BM |
| | : | |
| | : | Trustee's Final Report And Account, |
| | : | Proposed Order Of Distribution and |
| | : | Fee Applications |
| | : | |
| **Debtor** | : | Chapter 7 |

### ORDER OF COURT

**AND NOW**, this 26th day of **January**, 2009, for reasons set forth in the preceding memorandum opinion, it hereby is **ORDERED**, **ADJUDGED** and **DECREED** as follows:

(1) The objection of debtor Michael W. Owens, Sr. and Linda Owens to the final distribution to creditors proposed by the chapter 7 trustee be and hereby is **OVERRULED**.

(2) The chapter 7 trustee's proposed final distribution to creditors be and hereby is **APPROVED**. The chapter 7 trustee **SHALL** make distribution to creditors no later than ten days after the deadline for appealing this order has passed.

(3) The application of the chapter 7 trustee for compensation and reimbursement of expenses in the amount of $9,155.45 be and hereby is **APPROVED**.

(4) The application of counsel to the chapter 7 trustee for compensation and reimbursement of expenses in the amount of $13,026.66 be and hereby is **APPROVED**.

It is **SO ORDERED**.

_____
BERNARD MARKOVITZ
U.S. Bankruptcy Judge

**FILED**

cm: Lisa M. Swope, Esquire
Michael W. Owens, Sr. and Linda A. Owens
Don Michael Hahn, Esquire
Office of United States Trustee

JAN 26 2009

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA